## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| THOMAS SHORTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05-0506 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's Application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion for Judgment on the Pleadings filed on January 10, 2006 (Document No. 11.), and Defendant's Motion for Judgment on the Pleadings filed on February 9, 2006 (Document No. 15.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Thomas Shorter (hereinafter referred to as "Claimant"), initially filed an Application for DIB and SSI benefits on July 9, 2002, alleging disability as of May 10, 2002, due to "failed back surgery, low back pain, right leg pain, headaches from brain surgery." (Tr. at 126 - 128, 157, 399 - 401.) The claims were denied initially and upon reconsideration. (Tr. at 89 - 91, 100 - 102,402 - 409.) Claimant requested a hearing before an ALJ (Tr. at 103.), and the hearing was held on February 10, 2004, before the Honorable William B. Russell. (Tr. at 24 - 72.) By Decision dated November 24, 2004, ALJ Russell determined that Claimant was not entitled to benefits. (Tr. at 13 -

23.) Claimant requested review of the ALJ's Decision, and the ALJ's decision became the final decision of the Commissioner on May 20, 2005, when the Appeals Council denied Claimant's request for review.  (Tr. at 5 - 7.) On June 23, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (1999).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of

2

substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (1999).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory

4

findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of disability.[1]  (Tr. at 22, Finding No. 2.)  Under the second inquiry, the ALJ found that Claimant's disorder of the spine was a severe impairment and his hypertension, hearing loss, depression, generalized anxiety disorder and anti-social disorder were non-severe. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's medically determinable impairments did not meet or medically equal the level of severity of any listing in Appendix 1, Subpart P, Regulation No. 4. (Id., Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity to "lift and/or carry 20 pounds

---

[1] ALJ Russell began his November 24, 2004, decision with a summary of the SSA's decisions upon Claimant's prior application for DIB and his applications for DIB and SSI under review in this case. (Tr. at 13.) Respecting Claimant's prior application, ALJ Russell discusses the SSA's decisions through the Appeals Council's denial of review on November 15, 2002, and states that "no further action was taken." Actually, Claimant filed a Complaint in this Court on January 13, 2003, seeking review of the administrative decision upon his prior application. *Shorter v. Barnhart*, Civil Action No. 1:03-0037, Document No. 1. The undersigned filed a Memorandum Opinion and Judgment Order on March 30, 2004, affirming the administrative decision in that case. *Id.*, Document Nos. 14 and 15. Claimant took no further action in that matter. Thus, the SSA's November 15, 2002, final administrative decision was *res judicata*. The ALJ found in this case (Tr. at 22, Finding No. 1.), and it appears undisputed, that Claimant was insured for DIB through September 30, 2003. Evidence predating the SSA's November 15, 2002, final decision upon Claimant's prior application may be considered in this case without reopening Claimant's prior claim. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Evidence postdating the termination of a claimant's eligibility for benefits must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time. *See Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)("[T]his Court has held that medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability."); *Cox v. Heckler*, 770 F.2d 411, 413 (4th Cir. 1985); *Leviner v. Richardson*, 443 F.2d 1338, 1343 (4th Cir. 1971).

occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; and

sit about six hours in an 8-hour workday with occasional climbing, balancing, stooping, kneeling,

crouching, and crawling; and needs to avoid concentrated exposure to hazards (machinery, heights,

etc.)" (Tr. at 23, Finding No. 7.)[2] The ALJ found that "claimant's past relevant work as fast food

worker and short order clerk did not require the performance of work-related activities precluded

by his residual functional capacity." (Id., Finding No. 8.)[3] On this basis, benefits were denied.  (Tr.

---

[2] ALJ Peters found in her May 6, 2002, decision that Claimant had the following residual functional capacity: "he can lift and/or carry 10 pounds frequently, 20 pounds occasionally, and he cannot push or pull any more than he can lift. He is capable of standing and walking for two hours out of an eight-hour workday, and sit for about six hours in an eight-hour workday. He can only occasionally be expected to balance kneel, crouch, crawl or stoop, and should never be expected to climb. With respect to manipulation, his handling and fingering would be limited by occasional. [sic] He has unlimited ability to reach in all directions and to feel, but he is prohibited from working with machinery or at heights." (*Shorter v. Barnhart*, Civil Action No. 1:03-0037, Document No. 6, Tr. at 24, Finding No. 7.) Thus, ALJ Peters concluded that Claimant had the residual functional capacity to perform "a narrow range of light work." (Id., Tr. at 17 - 18, 25.) The undersigned notes that a copy of ALJ Peters' decision is in the record in this case at Tr. 76 - 86.

[3] ALJ Peters found in her May 6, 2002, decision that Claimant "is unable to perform any of his past relevant work." (*Shorter v. Barnhart*, Civil Action No. 1:03-0037, Document No. 6, Tr. at 24, Finding No. 8.) Findings respecting a claimant's residual functional capacity and ability to perform past relevant work during one period "[are] not conclusive evidence of [his] residual functional capacity at a later date." *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996), *distinguishing Lively v. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir. 1987)("Rucker's two applications . . . were four years apart. Given this interval, different conclusions about Rucker's RFC are entirely plausible."). It appears from the record in *Shorter v. Barnhart*, Civil Action No. 1:03-0037, that Claimant filed his first application on November 12, 2000, and from the record in this case that he filed his second application on July 9, 2002. ALJ Russell issued his November 24, 2004, decision  about two years and six and a half months after Judge Peters issued her decision upon Claimant's prior application. While ALJ Russell considered some of the same evidence which was before ALJ Peters in reaching his decision, he also considered evidence which developed after ALJ Peters reached her decision, most notably further mental and physical residual functional capacity assessments. Under these circumstances, the undersigned finds that Judge Peters' earlier, more restrictive findings and conclusions respecting Claimant's RFC and ability to perform his past relevant work did not bind or preclude Judge Russell from reaching somewhat different findings and conclusions respecting the same issues.

at 23.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on August 19, 1970, and was 33 years old at the time of the administrative hearing, February 10, 2004. (Tr. at 126.) Claimant obtained a General Equivalency Diploma. (Tr. at 163.) In the past, he worked as a cook and laborer. (Tr. at 158.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant states that "Judge Russell made a number of factual findings that include but were

7

not limited to: (1) a finding that the claimant could sit for six hours out of an eight hour workday; (2) that according to Dr. Siddiqi and Dr. Shah [Claimant's] pain was not at a disabling level; (3) that Dr. Shah made no findings regarding any impairment of the claimant's grip." (Document No. 12, p. 2.) Claimant contends that "[t]he ALJ's decision in this matter violates 20 C.F.R. 404.1520 in that it fails to consider all evidence in the record when making any determination or decision as to whether the Plaintiff is disabled." (Id.) Specifically, Claimant asserts that the ALJ did not consider or mention limitations found by Dr. Siddiqi in a Functional Capacity Evaluation, statements which Claimant made in filling out his application for benefits, an SSA employee's observations of Claimant as he was filling out the application forms, and Dr. Shah's indications of claimant's symptoms and diagnosis. Claimant states further as follows (Id., p. 4, fn. 3.):

> Judge Russell's decision violates the bright line rules set forth in the Commissioner's regulations. There is no weighing of the evidence or harmless error analysis that would apply to an error of law such as this. However, the decision is also not supported by substantial evidence on a factual basis. Judge Russell's factual findings merely add to and compound the legal error. Judge Russell's finding of three or four out of ten as to pain in Dr. Shah's notes is misleading. Mr. Shorter's pain has waxed and waned but it has been much higher that the three or four referenced in exhibit 11F/26 and 11F/22(14,15). In the notes in question, Mr. Shorter said his pain was three or four on a scale of ten but it was 'worse in the morning', 'activity increases the pain', and he was taking OxyContin, the most powerful pain medication on the market. In later notes, Mr. Shorter described pain as 9/10, 10/10, 8/10. (294, 297, 300, 302.) This level of pain is disabling and if he engaged in 'activity' even with pain medication, Mr. Shorter's condition would worsen.

The Commissioner responds with the following assertions (Document No. 15, pp. 9 - 14.):

1.   The ALJ was not required to consider a functional capacity evaluation that predated the relevant period by two years and which was considered in a prior ALJ decision upheld by the District Court.

2.   The case should not be remanded to discuss the one time observations of a Social Security interviewer (who is not a medical source) where the ALJ considered the relevant medical source opinions and Plaintiff's functional limitations.

3.      The evidence of record did not demonstrate that Plaintiff treated for an arm and/or hand impairment and the ALJ properly discredited Plaintiff's subjective complaint that he could not handle or grasp.

4.      The ALJ fairly characterized the evidence when describing Plaintiff's statements to Dr. Shah.

## ANALYSIS

I. <u>Dr. Siddiqi's February 15, 2000, Functional Capacity Evaluation.</u>

Regulations establish a framework for determining the weight to be given to the opinions of medical sources respecting the nature and severity of claimants' impairments and residual functional capacities. Generally speaking with respect to medical opinions respecting the nature and severity of a Claimant's impairments, the ALJ gives more weight to opinions of treating physicians than to those of examining and non-examining physicians. 20 C.F.R. § 404.1527. As between the opinions of examining and non-examining physicians, the ALJ will generally give more weight to the opinion of examining physicians. 20 C.F.R. § 404.1527(d)(1). Opinions of medical experts are accorded the same treatment as that given non-examining sources. 20 C.F.R. § 1527(f)(2)(iii).

The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). In evaluating the opinions of treating physicians, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. <u>See</u> 20 C.F.R. § 404.1527(d)(2)(2000). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." <u>Ward v. Chater</u>, 924 F. Supp. 53, 55(W.D.Va. 1996); <u>see also</u>, 20 C.F.R. 404.1527(d)(2)(2000). The opinion

of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2)(2000). Ultimately, it is the responsibility of the ALJ, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. Oppenheimer v. Finch, 495 F.2d 396,397 (4th Cir. 1994).

Social Security Ruling 96-2p, 1996 WL 374188 (S.S.A.), reiterates the standard for considering medical opinions of treating sources stating when the ALJ must adopt the opinions of treating sources on the issue(s) of the nature and severity of claimants' impairments as follows:

> The [regulatory] provision recognizes the deference to which a treating source's medical opinion should be entitled. It does not permit us to substitute our own judgment for the opinion of a treating source on the issue(s) of the nature and severity of an impairment when the treating source has offered a medical opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.

According to SSR 96-2p, the medical opinions of treating sources must be given controlling weight when they meet four factors: (1) they must be opinions of "treating sources"; (2) they must be "medical opinions", i.e., opinions about the nature and severity of claimants' impairments; (3) the ALJ must find them "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques; and (4) even if well-supported, the opinions must be "not inconsistent" with the other "substantial evidence" in the individual's case record. SSR 96-2p states further as follows:

> It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion about what the individual can still do. Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not.

10

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2) - (6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2003). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996). The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2003).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a

11

> claimant's own statement of what he or she is able or unable to do.  That is, the SSA
> need not accept only physicians' opinions. In fact, if conflicting medical evidence is
> present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). No "special significance" is given to medical source opinions, including treating source opinions, with respect to issues reserved to the Commission. See 20 C.F.R. § 404.1527(e)(1) - (3). Medical source opinions respecting such issues must nevertheless be considered based upon the factors set forth at 20 C.F.R. § 404.1527(d)(2) - (6) as set forth above. See Social Security Ruling 96-5p ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d).")

If the claimant's residual functional capacity permits his performance of past relevant work, the analysis ends and benefits are denied. If the claimant's residual functional capacity prevents his performance of past relevant work, the ALJ must consider whether the claimant is disabled under the Vocational Guidelines or, to the extent that non-exertional limitations are presented, submit a hypothetical question to a vocational expert respecting the existence of work in the regional and national economies which the claimant can perform. To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and the ALJ must present a hypothetical question which fairly sets out all of the claimant's impairments and abilities. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments and limitations, the questions need only reflect those impairments that are supported

by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The United States Court of Appeals for the Fourth Circuit has stated that in Social Security cases, "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to *all* of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (emphasis added). Quoting its decision in a prior case, the Court stated as follows:

> The courts . . . face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

Id. at 236 (quoting Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)).

The record in this case contains the medical records of Dr. Shah Siddiqi from January 7, 2000, to December 13, 2002 (Tr. at 312 - 329.), including Dr. Siddiqi's February 15, 2000, Functional Capacity Evaluation in which Dr. Siddiqi opined that Claimant could not sit for thirty minutes due

13

to his legs going numb and could not stand for thirty minutes due to back pain. (Tr. at 211 - 218.) These latter documents were in the administrative record and before the Court in <u>Shorter v. Barnhart</u>, Civil Action No. 1:03-0037, in which Claimant challenged the SSA's denial of DIB upon his prior application at Document No. 6, Tr. at 218 - 224. The record in that matter also contained a February 23, 2001, letter from Dr. Siddiqi to the West Virginia Workers' Compensation Fund in which Dr. Siddiqi stated that Claimant "has undergone a considerable period of conservative treatment. He is also being seen at the pain clinic who are in the process of arranging lumbar injections." (<u>Shorter v. Barnhart</u>, Civil Action No. 1:03-0037, Document No. 6, Tr. at 268.) Dr. Siddiqi further stated that Claimant's "FCE indicates that he will be capable of doing light to medium work. I have suggested we will have him seek job placement with light to medium work." (<u>Id.</u>)[4] As noted above, ALJ Peters discussed this evidence in her May 6, 2002, decision and concluded that Claimant had the residual functional capacity to perform "a narrow range of light work." (<u>Id.</u>, Tr. at 17 - 18, 25.)

In determining Claimant's RFC in this case, ALJ Russell stated as follows (Tr. at 21.):

> The undersigned has also considered the opinions of Dr. Siddiqi and Dr. Kropac that claimant is disabled (Exhibits 6F/2 and 10F). This is an issue reserved to the Social Security Administration (20 CFR 404.1527(e); 416.927(e); and SSR 95-5p). Dr. Siddiqi's office notes fail to show debilitating pain. In fact, the record shows claimant's pain was a 3 on a scale of 1 to 10 with medication and without medication it was only a 4 (Exhibit 11F/15). Dr. Kropac opined the claimant lacked the ability to perform even sedentary work. The undersigned notes that Dr. Kropac had never placed any limitation on the claimant's physical abilities prior to the completion of

---

[4] Though the record in this case contains medical records from Dr. Siddiqi covering the period from January 7, 2000, to December 13, 2002, (Tr. at 312 - 329.) this letter is not included in them. The record in that case also contained a December 18, 2001, letter from Dr. Siddiqi to the West Virginia Workers' Compensation Fund stating that "I have suggested that [Claimant] may benefit with vocational rehab with a view to considering light-medium work duty." (*Shorter v. Barnhart*, Civil Action No. 1:03-0037, Document No. 6, Tr. at 309.) This document is also not in the record in this case.

this physical residual functional capacity assessment which was requested by the attorney. Moreover, Dr. Kropac's physical examinations showed claimant had normal strength in all extremities, he was able to heel and toe walk without weakness, and squat and come up to a stand. The orthopedist assessed claimant only needed maintenance medication and he did not feel additional treatment was needed (Exhibit 19F). Thus, the undersigned finds there is no objective evidence to support the opinion with the limitations described. The undersigned also is aware that claimant alleges difficulty with his grip, but interestingly both treating physicians placed no limitations on grip strength. Although these reports have been considered, they are not accorded significant weight in the determination of claimant's severe physical impairments or in the determination of his residual functional capacity for the reasons stated above.[5]

Claimant correctly states that ALJ Russell did not mention Dr. Siddiqi's opinions respecting Claimant's capacity for sitting and standing stated in his February 15, 2000, Functional Capacity Evaluation in his decision. The record, however, contains two, more contemporaneous physical RFC assessments of DDS physicians (Tr. at 246 - 253, 330 - 337.) that Claimant could stand and walk and sit for about six hours in an eight-hour workday; the February 9, 2004, Physical Residual Functional Capacity Assessment of Dr. Kropac indicating that Claimant could stand and/or walk less than two hours and sit less than about six hours in an eight-hour workday (Tr. at 389 - 396.); and the testimony

---

[5] The undersigned notes that references to Exhibits in the administrative record in this quote are incorrect. ALJ Russell indicates that Dr. Siddiqi's and Dr. Kropac's opinions that Claimant is disabled are at Exhibits 6F, page 2, and 10F. Exhibit 6F, page 2 (Tr. at 227.) is a physical therapy note and Exhibit 10F is the Psychiatric Review Technique form completed by Dr. James Binder (Tr. at 269 - 282.). Exhibit 11F, page 15 (Tr. at 297.), is the first page of three about Claimant's June 13, 2002, visit to The Know Pain Clinic. The document states that Claimant reported experiencing pain then as "10 at worst over the last 30 days * * * Rated at 6 at best and 6 at present. Constant, worse in the morning and evening. Alleviated by TENS unit and hot water. Exacerbated by doing any increased activity. Associated symptoms of numbness and tingling in arms and legs, burning in upper back between his shoulders and swelling of the knees." This document does not support ALJ Russell's statement that "the record shows claimant's pain was a 3 on a scale of 1 to 10 with medication and without medication it was only a 4 . . .." Indeed, the undersigned finds that the record as a whole as it contains Claimant's subjective statements about the pain he has experienced indicates, as Claimant states, that his pain has "waxed and waned" and been much higher at times than the 3/10 with medications and certainly much higher than the 4/10 without medications which ALJ Russell found. ALJ Russell's findings in this regard are therefore not supported by substantial evidence.

15

of medical expert Dr. Alexander, a specialist in rheumatology and internal medicine, indicating his opinion that Claimant could stand and walk at least six hours and sit as long as he could change positions every one to two hours and stand and walk around for a minute or two. (Tr. at 59.) ALJ Russell summarizes Dr. Kropac's and Dr. Alexander's RFC assessments (Tr. at 17 - 18.) but does not mention the DDS physicians' assessments though apparently he relied upon them. The undersigned finds the ALJ's failure to mention Dr. Siddiqi's opinions respecting Claimant's capacity for sitting and standing stated in his February 15, 2000, Functional Capacity Evaluation in his decision error to the extent that the ALJ was obligated to evaluate every medical opinion he received. Judge Russell's error in this regard, however, was harmless in view of the more contemporaneous RFC assessments of the DDS physicians, Dr. Kropac and Dr. Alexander. See Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir 2003); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") The ALJ committed error requiring remand, however, in failing to mention, conduct an analysis and provide some reasonable explanation for relying, if he did, upon the DDS physicians' RFC assessments which were Exhibits 7F and 13F before him and discounting the RFC assessments of Dr. Kropac and Dr. Alexander.

II.    The ALJ's Consideration of Claimant's Pain, Claimant's Statements in Completing his
       Application, the SSA Employee's Observations and Limitations in Claimant's Grip.

A two-step process is used to determine whether a claimant is disabled by symptoms/pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (1999); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an

impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which it affects a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990).  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (1999).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (i) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (1999.

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,
the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p provides further as follows:

Policy Interpretation: A symptom is an individual's own description of his or her physical or mental impairment(s). Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce pain or other symptoms has been established, adjudicators must recognize that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments and the same medical signs and laboratory findings. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, any statements of the individual concerning his or her symptoms must be carefully considered if a fully favorable determination or decision cannot be made solely on the basis of objective medical evidence. If an individual's statements about pain or other symptoms are not substantiated by the

> objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects.

Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which  significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself.  Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain.  Id. at 595.  Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision.  The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

On July 9, 2002, when Claimant filled out his applications for DIB and SSI, SSA employee B. J. Beard interviewed him. (Tr. at 168 - 169.) The SSA employee observed that Claimant had

19

difficulty standing and walking. He wrote as follows (Tr. at 168.): "Very cooperative. Completed [application] with no difficulty. It took him about an hour to complete the form. When he started to get out of his chair, I thought I'd have to help him. Took a minute to straighten up after he got out of the chair. Walked stiffly." In August, 2002, Claimant indicated in a Personal Pain Questionnaire that he experienced continuous lower back and right leg/hip pain and migraines. (Tr. at 177 - 181.) He stated that his experience of pain was "[a]n 8 on a scale of 1 - 10. I cannot function. The pain is too severe. I cannot focus for the pain. I have to lie down." He stated that "bending, stooping, standing, sitting, laying" caused the pain/made the pain worse and "heat and pain medication lessens the pain but minimally." Claimant further indicated in completing an Activities of Daily Living form how his experience of pain limited him in those activities. (Tr. at 182 - 185.) Medical records of Dr. Shishir Shaw from March, 2001, to December, 2002, indicate that Claimant described his pain on a scale of one to ten as between 3 and 5 when he was taking his medications and 9/10 when he was not. (Tr. at 283 - 311.) The record reveals that Claimant has had surgery for his back condition and has utilized several means of treatment for persistent chronic pain including pain medications, a TENS unit, physical therapy and steroid injections.

Having summarized the evidence of record, the ALJ stated as follows (Tr. at 21.):

Based on the foregoing evidence and related testimony, it appears that . . . objective signs and clinical findings indicate a higher level of functioning than that alleged by the claimant at the hearing. The claimant alleges that all significant gainful activity is precluded because of his impairments. Although the claimant may suffer from some limitations due to his back impairment, claimant's testimony is not credible to the extent that his limitations are so severe that he cannot engage in any work activity. This is inconsistent with the objective medical evidence, treatment, and the evaluations of various examining medical sources.

The ALJ provides no explanation for these conclusions as the Rules, Regulations and case law require. See Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006.) The ALJ failed to relate what Claimant

stated were the symptoms and pain which he was experiencing as a consequence of his back condition and determine whether or not his back condition could reasonably be expected to produce the symptoms and pain alleged. The statements which Claimant made in August, 2002, on his Personal Pain Questionnaire and Activities of Daily Activities form are relevant. Among other things, Claimant reported experiencing numbness and tingling in his hands as symptomatic. These are clearly matters germane to the pain/credibility analysis. The ALJ further failed to gather and evaluate evidence in view of the seven factors stated above. Furthermore, SSR 96-7p makes it clear that "statements by . . . other persons concerning the individual's symptoms" are relevant and therefore the statement of the SSA employee should be considered in considering Claimant's report of his symptoms/pain and credibility if not substantiated by objective medical evidence. For these additional reasons, this matter must be remanded for further hearings and proceedings as necessary and a step four and step five re-analysis of the all of the evidence of record including an assessment of Claimant's allegations of symptoms and pain and their impact upon his residual functional capacity in conformity with the Rules, Regulations and case law.

Based upon a thorough examination of the evidence of record and careful reading of ALJ Russell's decision in view of the applicable Rules, Regulations and case law, the Court finds that the Commissioner's decision that Claimant is not entitled to DIB is not in conformity with all applicable legal standards and supported by substantial evidence of record. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **DENIED**, the final decision of the Commissioner is **VACATED**, this matter is **REMANDED** to

the Commissioner for further proceedings and analysis and this case is **DISMISSED** from the

docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

ENTER: March 23, 2007.

R. Clarke VanDervort
United States Magistrate Judge